**BROWN KWON & LAM LLP**
William Brown, Esq.
275 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5825
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TRACY LENTZ,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **AMERICAN ACADEMY MCALLISTER INSTITUTE OF FUNERAL SERVICE, INC. DANIEL MCMANUS, MARY MARGARET DUNN, I. MARTIN GOLDSTEIN and DONALD CYMBOR** | **COMPLAINT** |
| **Defendants.** | |

Plaintiff Tracy Lentz ("Plaintiff"), by and through her undersigned attorneys, hereby files this Complaint against American Academy McAllister Institute of Funeral Service, Inc. ("AAMI"), Daniel McManus ("McManus"), Mary Margaret Dunn ("Dunn"), I. Martin Goldstein ("Goldstein") and Donald Cymbor ("Cymbor") (collectively, "Individual Defendants" and together with AAMI, "Defendants") and alleges as follows:

**<u>INTRODUCTION</u>**

1.      Plaintiff alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), that Defendant AAMI engaged in discrimination and retaliation against Plaintiff on the basis of sex, and for asserting her rights to be free from discrimination including harassment. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary

1

damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants engaged in discrimination and retaliation against Plaintiff on the basis of sex, and for asserting her rights to be free from discrimination including harassment. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4.      This Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Tracy Lentz*

6.      Plaintiff Tracy Lentz is a female adult who resides in Suffolk County, New York.

7.      Plaintiff was employed by AAMI and, at all relevant times, met the definition of an "employee" under the applicable laws.

8.      Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***American Academy McCallister Institute of Funeral Service, Inc.***

9.      American Academy McAllister Institute of Funeral Service, Inc. is a domestic not-for-profit corporation organized under the laws of the State of New York with a principal place of operation located at 1501 Broadway, 11th Floor, New York, NY 10036.

10.     AAMI employed Plaintiff and, at all relevant times, met the definition of an "employer" under the applicable laws.

11.     At all relevant times, AAMI maintained control, oversight, and direction over the terms and condition of Plaintiff's employment, including, but not limited to, hiring, firing, work assignments, work schedules, payroll, timekeeping, and other employment practices.

12.     At all relevant times, AAMI had the power to prevent or stop any unlawful policies and practices alleged herein.

13.     At all relevant times, AAMI had the power to maintain employment records, including personnel files, time records, and pay records, of Plaintiff.

***Daniel McManus***

14.     At all relevant times, Individual Defendant Daniel McManus was the Chairman of the Board of Directors at AAMI.

15.     At all relevant times, Individual Defendant Daniel McManus was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

16.     At all relevant times, Individual Defendant Daniel McManus was directly involved in managing the operations of AAMI.

17.     At all relevant times, Individual Defendant Daniel McManus had authority over personnel decisions and the employment policies, practices, and procedures at AAMI.

18.     At all relevant times, Individual Defendant Daniel McManus had the power to hire, fire, promote or discipline Plaintiff, and had control over the terms and conditions of Plaintiff's employment at AAMI, including her assignments, work schedule, pay and responsibilities.

19.     At all relevant times, Individual Defendant Daniel McManus had the power to prevent or stop any unlawful practices that harmed Plaintiff at AAMI.

### *Mary Margaret Dunn*

20.     During the relevant period, Individual Defendant Mary Margaret "Meg" Dunn was the President of AAMI.

21.     Individual Defendant Meg Dunn was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

22.     Individual Defendant Meg Dunn was directly involved in managing the operations of AAMI.

23.     Individual Defendant Meg Dunn had authority over personnel decisions and the employment policies, practices, and procedures at AAMI.

24.     Individual Defendant Meg Dunn had the power to hire, fire, promote or discipline Plaintiff, and had control over the terms and conditions of Plaintiff's employment at AAMI, including her assignments, work schedule, pay and responsibilities.

25.     Individual Defendant Meg Dunn had the power to prevent or stop any unlawful practices that harmed Plaintiff at AAMI.

***Donald Cymbor***

26.     During the relevant period, Individual Defendant Donald Cymbor was the President of AAMI.

27.     Individual Defendant Donald Cymbor was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

28.     Individual Defendant Donald Cymbor was directly involved in managing the operations of AAMI.

29.     Individual Defendant Donald Cymbor had authority over personnel decisions and the employment policies, practices, and procedures at AAMI.

30.     Individual Defendant Donald Cymbor had the power to hire, fire, promote or discipline Plaintiff, and had control over the terms and conditions of Plaintiff's employment at AAMI, including her assignments, work schedule, pay and responsibilities.

31.     Individual Defendant Donald Cymbor had the power to prevent or stop any unlawful practices that harmed Plaintiff at AAMI.

***I. Martin Goldstein***

32.     During the relevant period, Individual Defendant I. Martin Goldstein was an instructor and later a Board Member of AAMI.

33.     Individual Defendant I. Martin Goldstein subjected Plaintiff to a hostile work environment and was an "aider and abettor" within the meaning of the applicable laws.

## ADMINISTRATIVE PROCEDURES

34.     Plaintiff has complied with any and all other prerequisites to filing this action.

35.     Plaintiff has exhausted the administrative requirement under the ADA and Title VII of filing a charge with the Equal Employment Opportunity Commission ("EEOC"). On or about

September 30, 2021, Plaintiff filed a Charge of Discrimination against AAMI with the EEOC. On

or about March 31, 2022, the EEOC issued a Notice of Right to Sue, which is attached hereto as

**Exhibit A**. The instant lawsuit was initiated within ninety (90) days of Plaintiff's receipt of the

Notice of Right to Sue.

## STATEMENT OF FACTS

36.     AAMI is a funerary service school located within New York City, which offers to

students a two-year Associate Degree program in Funeral Service.

37.     Plaintiff Tracy Lentz was first hired by AAMI as an adjunct faculty member in

2008.  Through her long tenure at AAMI, Ms. Lentz proved herself to be instrumental to the

success of the institution.  As a result of her outstanding work performance, and through sheer

determination, Ms. Lentz was able to overcome significant hurdles and quickly rose through the

ranks, ultimately achieving the titles of Director of Operations, Program Director, Dean of

Academic & Student Services, and Interim Director of Admissions.

38.     During her time as an administrator, Plaintiff proved herself to be an indispensable

asset to AAMI.  In addition to her day to day duties assisting students and overseeing staff, some

of her notable accomplishments include: redesigning the admission processes, organizing a virtual

job fair, revising the course numbering to meet ABFSE standards, rewriting the math courses to

fit the general education requirements, completing long overdue staff evaluations, significantly

reducing costs by improving efficiency and eliminating redundancies, organizing and updating the

library, negotiating a termination of AAMI's previous lease, locating a new office and negotiating

a new lease, successfully overseeing the move to AAMI's new location, and conducting significant

media outreach to improve AAMI's visibility.

39.     By 2019, the longtime President of AAMI, Meg Dunn, was nearing retirement, and Ms. Lentz was being tapped to be her replacement.   Indeed, as the second highest ranking administrator in AAMI, Ms. Lentz was a natural choice for the position.   Instead, Ms. Lentz was passed over not once, but twice for the President position, which was ultimately given to less qualified male candidates.

40.     The decision to deny Ms. Lentz this promotion was not made in isolation.   AAMI has long bestowed preferential treatment to male employees, who are frequently fast tracked for promotions and other advancement opportunities at the expense of their ofttimes more qualified female colleagues.

41.     During her employment, Ms. Lentz made a number of formal and informal complaints to AAMI regarding their failure to promote on the basis of her sex, as well as sexual harassment by two male AAMI board members.   In response, Ms. Lentz was subjected to systematic retaliation.   Eventually, AAMI terminated Ms. Lentz' employment just one day after AAMI concluded its investigation into her complaints of discrimination and harassment.

42.     In 2016, after working for more than eight years as an adjunct faculty member, Ms. Lentz was offered the position of Dean of Academic & Student Services and Division Chair.   In order for Ms. Lentz to officially take these positions, Ms. Lentz was required to get a Masters, which she had to pay for out of pocket at a cost of approximately $35,000.

43.     By 2019, Ms. Lentz was the second highest ranking administrator after the President.   As such, President Dunn, who has served in that position for over 24 years, had assured Ms. Lentz multiple times that she was going to selected as the next President of AAMI. It should be noted that Meg Dunn is the wife of the Chairman of AAMI's Board of Directors, Daniel McManus, and it was widely known that he was the one who yielded ultimate authority.

44.     Despite President Dunn's statements, AAMI failed to offer Ms. Lentz the President position. Instead, Dr. George Connick was selected by the Board as "Interim President."  Dr. Connick was 83 years old at the time of his appointment, and prior to that, had worked just a few hours per week as a consultant.  Furthermore, the Board of Directors chose Dr. Connick despite the fact he never applied for the position.

45.     When Ms. Lentz complained to President Dunn, she was told that Dr. Connick was only temporarily serving as "interim" President, and was assured that she remained the leading candidate.  As consolation, AAMI gave Ms. Lentz a number of additional titles including Program Director and Director of Operations.

46.     Meanwhile, during her time as an administrator at AAMI, Ms. Lentz became increasingly concerned about complaints by female staff, female students and faculty members regarding an instructor, I. Martin Goldstein.  As a result, starting in 2016, Ms. Lentz opened a file on Mr. Goldstein to document the allegations. During the course of her investigation, Ms. Lentz documented six separate incidents from female faculty, staff and students reporting harassment by Mr. Goldstein.

47.     The reports all mirrored Ms. Lentz' personal experiences with him.  Specifically, there was a consensus that Mr. Goldstein was actively hostile to women.  Mr. Goldstein would consistently insult and demean female employees, including Ms. Lentz by calling them "stupid," "overly emotional," "irrational" as well as other stereotypical misogynistic labels.  While Mr. Goldstein was seen as hostile and abusive to female employees and students, which is further reflected in student evaluations going back 19 years, he was professional and congenial to males.

48.     At the same time, Mr. Goldstein has been highly influential at AAMI, with the ability to make or break careers.  In fact, when Ms. Lentz initially raised the reports of harassment

to President Dunn, she instructed Ms. Lentz not to take any action because "he's a better friend than enemy." Furthermore, around December 2020, Ms. Lentz personally witnessed Mr. Goldstein single handedly block a female employee's promotion by making defamatory statements about her during a board meeting.

49.     On July 22, 2020, Ms. Lentz had a lunch meeting with AAMI's Board President, Daniel McManus, to discuss the complaints of harassment against Mr. Goldstein. Ms. Lentz told Mr. McManus about Mr. Goldstein's abusive conduct towards herself and other woman at AAMI and how he was having a materially adverse impact on the career prospects of female employees at AAMI. In response, Mr. McManus warned Ms. Lentz that if she wanted to move up in the college, she had to be the "bigger person" and drop the issue. Mr. McManus specifically stated that if Ms. Lentz continued on this path, she would never become president. During that meeting Mr. McManus also stated that, "**Tracy you need to be more of an open book, I have no secrets. You can open my desk draw and the most you will find is a left-over condom from the 90's.**" Ms. Lentz left the meeting feeling shocked, disgusted, hopeless and distraught.

50.     Around this period, despite the documented complaints against him, Mr. Goldstein was officially placed on AAMI's Board. Furthermore, in the period following Ms. Lentz' meeting with Mr. McManus, she noticed a change in how she was treated. She began having responsibilities taken away from her, and the Board never asked her to put in an application for the President position, even though she knew a new president would soon be appointed. It was clear to Ms. Lentz that by raising complaints of abuse and discrimination with Mr. McManus, from that point on, her career prospects at AAMI were in question.

51.     On March 15, 2021, President Connick resigned and an emergency board meeting was held on March 19, 2021. The Board then selected Donald Cymbor to be the new President.

Mr. Cymbor is a funeral director who happened to be on the executive committee to choose the next President. He had no experience in college administration, and does not even have a master's degree, despite Ms. Lentz being told it was prerequisite for the position (in fact Ms. Lentz, obtained a master's degree at the direction of Meg Dunn who told Ms. Lentz she would be selected to be the next president). There is thus no doubt that Ms. Lentz was more qualified for the position than Mr. Cymbor.

52.     After hearing about the appointment, Ms. Lentz complained to Board Members, William Flooks and Pam Macbraybe about the disparate treatment. Almost immediately following Ms. Lentz' complaints, Mr. Cymbor began taking away responsibilities. During a March 23, 2021 meeting, Mr. Cymbor told Ms. Lentz that he would be taking over payroll, and course scheduling from her. Furthermore, Mr. Cymbor told Ms. Lentz to vacate her office by April 1, 2021, when she asked where she would sit, he responded, "I don't care."

53.     On April 2, 2021, Ms. Lentz lodged a formal written complaint of employment discrimination. Shortly thereafter, AAMI blatantly retaliated against Ms. Lentz by essentially removing all of her job responsibilities. Furthermore, in the days that followed her formal complaint, she was told by Donald Cymbor he was now in charge of staff, to not call for any more staff meetings, and that she would no longer be responsible for faculty, or their evaluations. In addition, AAMI took away remote access to the school's camera, course information and student grades. The latter was particularly troubling as it made it impossible for Mr. Lentz to quickly address student concerns.

54.     On April 28, 2021, counsel for Plaintiff sent an email to AAMI's general counsel providing notice of pending litigation. After serving AAMI with a formal demand letter dated

May 18, 2021, outlining Complainant's allegations, AAMI retained Richard Steer, Esq., from the law firm of Davidoff Hutcher & Citron LLP to conduct an investigation.

55.     The investigation ultimately took the form of an inquisition into Ms. Lentz' role in AAMI's failure to achieve full accreditation in October 2020.  Not only did the accreditation process conclude nearly six months prior to Ms. Lentz' complaints, but also the accreditations process itself was personally overseen by then President Connick.  Ms. Lentz' role was to carry out the policy directives of President Connick, which she performed admirably.  In fact, Ms. Lentz was told at the time of Dr. Connick's appointment that the primary reason for his selection was his knowledge and experience with the accreditation process.

56.     On July 29, 2021, Complainant was notified that the investigation had concluded, which conveniently absolved AAMI of any wrongdoing.  Just one day later, on July 30, 2021, Ms. Lentz was notified that her employment was being terminated effective July 31, 2021.  AAMI stated that the termination was performance related, but failed to provide any specific justification.

57.     The above adverse actions, including her termination, were carried out in the context of Ms. Lentz' objectively outstanding work performance.  In fact, during an ABSFE Accreditors hearing, the accreditors mentioned that "**AAMI's strength is the program director, Tracy Lentz**."  There has not been a single negative review of Ms. Lentz' performance throughout the duration of her employment, and she was universally praised by those who have worked with her.

58.     It is thus clear that the stated reasons for Ms. Lentz' termination from AAMI were pretextual.

59.     AAMI discriminated against Ms. Lentz by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex, and retaliated against Ms.

Lentz for engaging in protected activities by making her work more difficult, removing job responsibilities, and terminating her employment after she made multiple complaints about AAMI's dicriminatory treatment, and hostile work environment.

60.     As a direct result of Defendants' discriminatory and retaliatory actions, Ms. Lentz suffered, and continues to suffer harm, include severe emotional distress.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### Discrimination and Retaliation in Violation of Title VII
### *Against AAMI Defendant*

61.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

62.     Plaintiff is an employee and a protected person within the meaning of Title VII and AAMI is a covered employer under Title VII.

63.     AAMI Defendant violated Plaintiff's statutorily protected rights under Title VII by engaging in discriminatory and retaliatory employment practices.

64.     AAMI Defendant discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to disparate treatment on the basis of her sex. AAMI fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory work conditions, in violation of Title VII.

65.     AAMI retaliated against Plaintiff on the basis of her protected activities under Title VII by terminating Plaintiff's employment after she complained about Defendants' discriminatory practices and hostile work environment.

66.     As a direct and proximate result of AAMI's unlawful discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

67.     As a direct and proximate result of AAMI's unlawful discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

68.     AAMI's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under Title VII, for which she is entitled to an award of punitive damages.

69.     Due to AAMI's violations of Title VII, namely, employment discrimination on the basis of sex and retaliation for engaging in protected activities, Plaintiff is entitled to recover from AAMI: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

**SECOND CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of the NYSHRL**
***Against All Defendants***

70.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

72.     Defendants violated Plaintiff's statutorily protected rights under the NYSHRL by engaging in discriminatory and retaliatory employment practices.

73.     Defendants discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

74.     Defendants retaliated against Plaintiff on the basis of her protected activities under the NYSHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

75.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

76.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

77.     Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

78.     Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of sex and disability and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

**THIRD CAUSE OF ACTION**
**Aiding and Abetting Discrimination and Retaliation in Violation of**
**the New York State Human Rights Law**
*Against Individual Defendants*

79.     Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

80.     Individual Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation committed against Plaintiff in violation of the NYSHRL.

81.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

82.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

83.     At all times, Individual Defendants' unlawful conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of the NYCHRL**
*Against All Defendants*

84.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

85.     Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

86.     Defendants violated Plaintiff's statutorily protected rights under the NYCHRL by engaging in discriminatory and retaliatory employment practices.

87.     Defendants discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

88.     Defendants retaliated against Plaintiff on the basis of her protected activities under the NYCHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

89.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

90.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

91.     Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

92.     Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of sex and disability and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

### THIRD CAUSE OF ACTION
### Aiding and Abetting Discrimination and Retaliation in Violation of
### the New York City Human Rights Law
### *Against Individual Defendants*

93.     Plaintiff hereby realleges and incorporates each and every allegation in each of the preceding paragraphs as if fully set forth herein.

94.     Individual Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation committed against Plaintiff in violation of the NYCHRL.

95.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

96.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

97.     At all times, Individual Defendants' unlawful conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

b.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

c.  An award of punitive damages against Defendants, in an amount to be determined at trial;

d.  Pre-judgment and post-judgment interest;

e.  An award of fees and costs that Plaintiff has incurred in this action, including but not limited to reasonable attorneys' fees and expert witness fees;

f.  A declaratory judgment that the actions, conduct and practices of AAMI complained of herein violate Title VII;

g.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the NYSHRL and NYCHRL;

h.  An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein; and

i.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  May 12, 2022                    Respectfully submitted,

                                       **BROWN, KWON & LAM LLP**

                              By:      */s/ William Brown*

                                       William Brown, Esq.
                                       521 Fifth Avenue, 17th Floor
                                       New York, NY 10175
                                       Tel.: (212) 295-5825
                                       Fax: (718) 795-1642
                                       wbrown@bkllawyers.com
                                       *Attorneys for Plaintiff*

EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website:  www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/31/2022

**To:** Ms. Tracy Lentz
C/O Brown, Kwon & Lam, Llp 521 Fifth Avenue, 17th Floor
New York, NY 10175
Charge No: 520-2021-05297

EEOC Representative and email:    Michell ChangQui
Federal Investigator
michell.changqui@eeoc.gov

---

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2021-05297.

On behalf of the Commission,

Digitally Signed By:Judy Keenan
03/31/2022

Judy Keenan
District Director

**Cc:**
Don  Cymbor
AMERICAN ACADEMY MCALLISTER INSTITUTE OF FUNERAL SERVICE INC
dcymbor@aami.edu

Benjamin Noren
Davidoff Hutcher & Citron LLP
bn@dhclegal.com

William Brown
BROWN, KWON & LAM, L.L.P.
wbrown@bkllawyers.com


Please retain this notice for your records.